UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

**COLUMBUS BANK & TRUST CO.**   CIVIL ACTION NO. 09-CV-1569
 *d/b/a* Synovus Capital Finance

VS.   JUDGE DOHERTY

**M/V SHOOTING STAR**   MAGISTRATE JUDGE METHVIN
  **(Official No. 591191), her**
  **engines, tackle, appurtenances, etc.,**
  *in rem*
**SOUTHERN OFFSHORE**
  **TRANSPORTATION, LLC**
**FRANK ALLEN LEARY,**
  *in personam*

*Ruling*
*(Rec. Doc. 15)*

Before the court is an unopposed motion for interlocutory sale of vessel filed by plaintiff Columbus Bank and Trust Co., d/b/a/ Synovus Capital Finance. (Doc. 15).[1] For the following reasons the motion is granted.

FINDINGS OF FACTS AND CONCLUSIONS OF LAW

The following facts are undisputed:

By a Promissory Note dated March 29, 2007, (the "Note") between plaintiff and defendant Southern Offshore Transportation, LLC ("Southern"), plaintiff agreed to make advances to Southern in an amount of $800,000.00.[2] The Note was secured, *inter alia*, by

---

[1] The deadline for defendant's opposition was November 3, 2009. (Doc. 18). No opposition has been filed by either defendant or any other potential claimant.
[2] Exh. 1.

guaranty (the "Guaranty") in favor of plaintiff by Frank Allen Leary ("Leary"). Under the Guaranty, Leary jointly and severally guaranteed Southern's obligations and liabilities to Plaintiff under the Loan Agreement.[3]

As further security for the Note, Southern executed a preferred ship mortgage in favor of Synovus dated March 29, 2007 (the "Preferred Ship Mortgage"), in the total amount of $800,000.00.[4]

The Preferred Ship Mortgage was filed for record at the National Vessel Documentation Center in Falling Waters, West Virginia on April 4, 2007 at 8:30 A.M., and recorded in Batch 582228, at Doc. ID 6930254.[5]

The Note requires that it be repaid by a series of payments.

Southern failed to make certain payments when due on the Note. Further, by letter dated July 24, 2009, Southern advised Synovus that it was unable to operate the SHOOTING STAR or the business associated with it.[6]

Southern's actions triggered the obligations of Leary under the Guaranty. Plaintiff states that the unpaid Preferred Ship Mortgage balance is estimated at $626,493.85.[7]

---

[3] Exh. 2.
[4] Exh. 3.
[5] Exh. 4.
[6] Exh. 5.
[7] Rec. Doc. 15 at 2.

On September 8, 2009, plaintiff effected the arrest of the vessel pursuant to orders issued by this Court. The vessel remains under arrest and neither her owners nor any party claiming an interest in her have taken any steps to obtain her release.

Notice of the arrest of the vessel was published in the Daily Advertiser on September 13, 20, and 27, 2009. [8]

*Analysis*

Plaintiff seeks an order directing the Marshal to order the sale of the MV SHOOTING STAR on grounds that defendants have not secured the release of the vessel and its expenses, and other potential claimants, continue to mount and erode the sale proceeds available to plaintiff or any other claiming an interest in the vessel. Plaintiff argues that the vessel may be damaged, deteriorate and/or decay while it sits in the shipyard. According to plaintiff, the

---

[8] Exh. 6.

Rule C of the Supplemental Rules of Admiralty provides:

**(4) Notice.** No notice other than execution of process is required when the property that is the subject of the action has been released under Rule E(5). If the property is not released within 10 days after execution, the plaintiff must promptly--or within the time that the court allows--give public notice of the action and arrest in a newspaper designated by court order and having general circulation in the district, but publication may be terminated if the property is released before publication is completed. The notice must specify the time under Rule C(6) to file a statement of interest in or right against the seized property and to answer. This rule does not affect the notice requirements in an action to foreclose a preferred ship mortgage under 46 U.S.C. §§ 31301 et seq., as amended. Supplemental Admiralty and Maritime Claims Rule C, 28 U.S.C.A.

Plaintiff's notice advertized that any one claiming an interest in the property should file its statement of interest within 15 days of the notice and file an answer to the complaint within 20. No such filing has been made.

market for the vessel is volatile and could result in a reduced sales price if delayed.

Rule E(9)(a) of the Supplemental Rules for Admiralty and Maritime Claims & Asset Forfeiture Actions sets forth the criteria for the disposition of property and interlocutory sales as follows:

> On application of a party . . . the court may order all or part of the property sold—with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court—if:
>
> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
>
> (B) the expense of keeping the property is excessive or disproportionate; or
>
> (C) there is an unreasonable delay in securing release of the property.[9]

The Fifth Circuit has held that to obtain an order for an interlocutory sale, lien holders need only show the existence of one of the three criteria set forth in Rule (E)(9)(a)(i). Merchants Nat'l Bank v. Dredge General G.L. Gillespie, 663 F.2d 1338, 1341 (5th Cir. 1981).

At the outset, defendants do not deny that Southern executed a promissory note, guaranteed by Leary, in favor of plaintiff in return for the advance of $800,000 and that Southern also executed a preferred ship mortgage in favor of plaintiff for $800,000 as further security. Further, Southern has not disputed that its failure to pay past monies and its letter

---

[9] Fed. R. Civ. P., Supp Admiralty Rule E(9)(a)(i).

indicating it is no longer operating the vessel or its business evidences its intent to default.

**(A) Is the vessel liable to deterioration while being detained in custody pending the action?**

The letter from Leary to Southern shows that the vessel is at Diamond B Shipyard in New Iberia, Louisiana on dry storage. Defendants have not disputed that maintenance schedules have thus been disrupted and that the vessel is susceptible to decay and deterioration because it is sitting idle and blocks. Accordingly, the undersigned finds that plaintiff has satisfied factor A.

**(B) Is the expense of keeping the property excessive or disproportionate?**

Plaintiff asserts that is has secured the services of a substitute custodian to maintain custody of the vessel for a monthly fee and been required to insure the Vessel and that these costs are mounting. It is clear that these costs will offset any amount the vessel can be sold for to satisfy any judgment in the case which has not been disputed by defendants. The undersigned thus finds that criteria B has been satisfied.

**(C)    Has there been an unreasonable delay in securing release of the vessel?**

The vessel was arrested on September 9, 2009. (Rec. Doc. 7). Defendants have never moved to vacate the arrest. Moreover, in Leary's July 24, 2009 letter, he states:

> [d]ue to the impact of the economy on the oilfield in the Gulf of Mexico and financial institution capital lending, I find that I cannot continue to operate the m/v Shooting Star O.N. 590629 or the business associated with it. . . . Sorry about the inconvenience.[10]

---

[10] Rec. Doc. 15-3, Exh. 5.

This statement evidences that defendants are financially incapable of securing the release of the vessel and does not intend to secure its release. Again, defendants have not disputed this conclusion. Accordingly, the undersigned finds that criteria (C) has been met.

*Conclusion*

Based on the evidence submitted showing that Southern has no intention to seek a release of the vessel; mounting costs and the risk of deterioration to the vessel, the undersigned concludes that plaintiff has shown good cause for the interlocutory sale of the vessel.

**IT IS HEREBY ORDERED** that the motion is **GRANTED**. The M/V SHOOTING STAR, her engines, tackle, appurtenances, fuel, furniture, rigging, etc., shall be advertised and auctioned by the United States Marshal, pursuant to Rule E(9) of the Supplemental Rules for Admiralty or Maritime Claims & Asset Forfeiture Actions of the Federal Rules of Civil Procedure, plaintiff to arrange advertisement in the Lafayette Daily Advertiser newspaper legal notices section subject to U.S. Marshal supervision and approval, and for M/V SHOOTING STAR to be made available for inspection by prospective purchasers jointly with plaintiff's representatives at mutually-convenient dates and times before the sale, subject to U.S. Marshal rules and requirements for attending aboard the vessel, and then for M/V SHOOTING STAR to be sold as soon as possible that may be convenient for the U.S. Marshal.

**IT IS FURTHER ORDERED** that at the judicial auction, plaintiff is to be permitted by the U.S. Marshal to bid on credit up to the sum of $626,493.85 or the amount of the unpaid Preferred Ship Mortgage balance at the time of the judicial auction. Plaintiff is to provide the U.S. Marshal with a copy of the First Preferred Ship Mortgage and a printout or statement of the amount which will be outstanding as of the date of the judicial auction no later than one week before the scheduled date of the judicial auction. If not, plaintiff's credit bid authority will be limited to $626,493.85.

**IT IS FURTHER ORDERED** that the Court shall retain jurisdiction of the above styled cause for such other and further proceedings as may be appropriate.

Signed at Lafayette, Louisiana on November 12, 2009.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE